UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| J.S.W., a minor by her mother, ) | |
| DELAINA WILLS, ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | 1:12-cv-315-RLY-TAB |
| ) | |
| CAROLYN W. COLVIN, ) | |
|     Defendant. ) | |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.    Introduction**

Plaintiff JSW appeals Commissioner Carolyn Colvin's decision denying her supplemental security income.[1] The severe impairment at issue is diabetes mellitus. JSW contends that the Administrative Law Judge erred in concluding that her diabetes does not meet or medically equal listing 109.00C or functionally equal the listings. For the reasons below, the Magistrate Judge recommends that JSW's brief in support of her appeal [Docket No. 21] be granted and this case be reversed and remanded for further consideration.

**II.    Discussion**

*A.    Standard*

"[A] child is disabled if she has a 'medically determinable physical or mental impairment, which results in marked and severe functional limitations' that 'has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Jelinek v. Astrue*, 662 F.3d

---

[1] JSW is a minor and her mother is bringing this action on her behalf.

1

805, 809 (7th Cir. 2011) (citing 42 U.S.C. § 1382c(a)(3)(C)(I)).  This assessment requires a three-step inquiry:

> First, if the child is engaged in substantial gainful activity, the ALJ will deny the claim. Second, if the child does not have a severe medical impairment or combination of impairments, then she is not disabled. Third, the child's impairments must meet, medically equal, or functionally equal any of the listings contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

*Jelinek*, 662 F.3d at 809–10 (citing 20 C.F.R. § 416.924(a)).  The Court shall reverse the Commissioner's "denial of disability benefits only if the decision is not supported by substantial evidence or is based on an error of law." *Id.*  "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003).  The ALJ is obligated "to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).  "But an ALJ need not mention every piece of evidence, so long he builds a logical bridge from the evidence to his conclusion." *Id.*

    B.    *Meet or Medically Equal Listing 109.08C*

The ALJ concluded that JSW's "diabetes mellitus does not meet or medically equal the requirements of listing 109.08 because she is older than age 6 and does not require 24-hour-a-day adult supervision of insulin treatment, food intake, and physical activity to ensure survival." [A.R. at 25.]  JSW does not dispute—and the Magistrate Judge agrees—that JSW does not satisfy listing 109.08 because she is over age 6.  20 C.F.R. Part 404, Subpt. P, App. 1.  However, JSW asserts that the ALJ failed to adequately address listing 109.00C, which addresses children

2

with diabetes mellitus over age 6.

> Listing 109.00C provides that for children age 6 or older:
>
> we follow our rules for determining whether the DM is severe, alone or in combination with another impairment, whether it meets or medically equals the criteria of a listing in another body system, or functionally equals the listings under the criteria in § 416.926a, considering the factors in § 416.924a. The management of DM in children can be complex and variable from day to day, and all children with DM require some level of adult supervision. For example, if a child age 6 or older has a medical need for 24–hour-a-day adult supervision of insulin treatment, food intake, and physical activity to ensure survival, we will find that the child's impairment functionally equals the listings based on the example in § 416.926a(m)(5).

20 C.F.R. Part 404, Subpt. P, App. 1. As JSW points out, the ALJ did not mention listing 109.00C in his decision. However, based on the ALJ's conclusion that JSW "does not require 24-hour-a-day adult supervision of insulin treatment, food intake, and physical activity to ensure survival" [A.R. at 25], it is evident that the ALJ considered listing 109.00C. But despite considering listing 109.00C, the ALJ failed to explain why he concluded that she "does not require 24-hour-a-day adult supervision of insulin treatment, food intake, and physical activity to ensure survival." Failing to provide such an explanation is grounds for reversal because the ALJ is required to build a logical bridge from the evidence to his conclusion, *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013), and in doing so must set forth his reasons for reaching that conclusion. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) ("[W]here the Commissioner's decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded.'"); *Rinaldi-Mishka v. Astrue*, No. 12-C-1305, 2013 WL 3466844, at *12 (N.D. Ill. July 8, 2013) ("[T]he ALJ 'must at least minimally articulate' her analysis to allow meaningful review.").

The ALJ's lack of explanation is particularly troubling given the evidence in the record

3

supporting the need for 24-hour-a-day adult supervision of insulin treatment, food intake, and physical activity to ensure survival.  With respect to 24-hour-a-day adult supervision of insulin treatment to ensure survival, JSW's mother, Belaina Wills, testified that JSW is not allowed to use the insulin pens or needles on her own due to her inability to properly administer the medication, which requires counting carbohydrates throughout the day and using a formula to determine the proper dosage.  [A.R. at  77.]  At school, the nurse is responsible for administering JSW's medication and the teacher helps monitor blood sugar levels [A.R. at 70, 438–45], which is consistent with her Individualized Education Plan ("IEP") requiring that an adult test blood sugar and administer insulin.  [A.R. at 436.]  Moreover, in January 2011, Heather Jolivette, a Nurse Practitioner with Riley Children's Hospital recommended that JSW have the assistance of a  "trained caregiver."  [A.R. at 449.]  Wills also testified that JSW's doctor ordered only adults to administer medication.  [A.R. at 77.]  These facts are sufficient to show the need for 24-hour-a-day adult supervision of insulin treatment to ensure survival.

Turning to the requirement for 24-hour-a-day adult supervision of food intake to ensure survival, JSW has to eat every three hours to remain on the doctor's recommended schedule [A.R. at 56], and carbohydrates and blood sugar levels must be monitored.  [A.R. at 77.]  The first meal begins with breakfast.  Wills struggles with getting JSW to eat breakfast because JSW frequently refuses to eat or does not eat enough breakfast so that she may receive insulin.  [A.R. at 57–59, 78.]  JSW has a similar problem with lunch.  [A.R. at 59.]  Moreover, JSW sneaks snacks even though she is not allowed, which impacts her blood sugar and insulin needs.[2]  [A.R. at 60.]  JSW's IEP also directs school officials to monitor her glucose levels and allow a snack

---

[2] Wills testified that she has "controlled it a little bit." [A.R. at 60.]

when levels become too low. [A.R. at 436.] In fact, the IEP provides detailed instructions related to food intake and states that only adults are to monitor snacks and meals. [*Id.*] Accordingly, these facts support a finding that JSW needs 24-hour-a-day adult supervision of food intake to ensure survival.

    Finally, the record also supports the conclusion that 24-hour-a-day adult supervision of physical activity is necessary to ensure survival. Before engaging in physical activity, such as gym or recess, JSW has to have a snack, get her blood sugar checked, and be administered insulin. [A.R. at 70.] A May 2011 school report indicates that physical activity may impact JSW's glucose levels and she may not walk or take extra laps in PE. [A.R. at 482.] The report also indicates that she "will not participate in the general physical education program" and "accommodations need to be made for [JSW's] level of activity in order to maintain appropriate blood sugar levels." [A.R. at 483.] Wills also testified that JSW cannot participate in sports or school programs because there is no qualified adult to supervise her and administer insulin. [A.R. at 72.] These facts are sufficient to show the need for 24-hour-a-day adult supervision of physical activity to ensure survival.

    In summary, not only did the ALJ fail to articulate his reasons for concluding that JSW does not satisfy the above criteria, but he failed to analyze the above evidence in conjunction with the requirement of 24-hour-a-day adult supervision of insulin treatment, food intake, and physical activity to ensure survival. Although the record does not explicitly state that failure to properly administer insulin, monitor food intake, or monitor physical activity is likely to result in significant or even fatal consequences, it is a reasonable inference that can be drawn from the record, which the ALJ should have confronted. Because the ALJ failed to confront and properly

analyze the above evidence, his decision is not supported by substantial evidence.

The Commissioner cites a variety of evidence to show that the ALJ's unexplained conclusion is supported by substantial evidence. [Docket No. 29 at 9.] However, these reasons were not set forth in the ALJ discussion of this listing [A.R. at 25–26], and such post-hoc reasoning is insufficient to preclude remand. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (explaining that an agency's lawyer is not permitted to defend the agency's decision on grounds that the agency itself had not embraced); *Shockley v. Astrue*, No. 1:08-CV-78, 2009 WL 1456956, at *4 (N.D. Ind. May 22, 2009) ("This Court cannot rely on the post-hoc reasoning provided by the Commission, and it is therefore disregarded."). The Commissioner also argues that the "ALJ extensively discussed the evidence pertaining to J.S.W.'s limitations and capabilities (Tr. 26–350), and no authority required the ALJ to discuss such evidence in any particular portion of the decision." [Docket No. 29 at 10.] The Magistrate Judge disagrees.

The ALJ is obligated to build a logical bridge from the evidence to his conclusion, *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), which was not done considering that the evidence was analyzed in the functional equivalence context under six domains and not under the criteria set forth in listing 109.00C. While it is generally true that an ALJ who discusses evidence in other parts of a decision need not repeat that discussion, the "extensive discussion" that the Commissioner is referencing is set forth as part of an entirely different analysis and well after the ALJ concludes that JSW "does not require 24-hour-a-day adult supervision of insulin treatment, food intake, and physical activity to ensure survival." *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2010) ("Although the ALJ cited the listings she considered and discussed the evidence of J.H.'s impairments in separate parts of the decision, . . .

.[t]here is no requirement of such tidy packaging, however; we read the ALJ's decision as a whole and with commonsense."). Accordingly, the Magistrate Judge concludes that the ALJ failed to adequately set forth his reasoning and therefore remand is warranted.

      C.      *Functionally Equivalent to Listing 109.08*

JSW also contends that the ALJ erred in concluding that she does not have an impairment or combination of impairments that functionally equals a listing. To determine if an impairment is functionally equivalent to a listing, the ALJ analyzes its severity in six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To functionally equal the listing, the ALJ must find an extreme limitation in one category or a marked limitation in two categories. 20 C.F.R. § 416.926a(a), (e)(2)(I).

      1.      Attending and Completing Tasks

JSW claims that the ALJ failed to consider that she was only on task 90% of the time, compared to her peers who are on task 95% of the time. [Docket No. 21 at 28 (citing A.R. at 456).] The ALJ, however, need not examine every piece of evidence in the record, so long as he addresses the evidence and builds a logical bridge from the evidence to his conclusion, *Denton*, 596 F.3d at 425, which he did. The ALJ considered that JSW has trouble completing tasks and inconsistently turns in her work. [A.R. at 30.] The ALJ's analysis also cites to Exhibit 25F3, which corresponds to the report cited by JSW at 456 in the administrative record. Accordingly, the ALJ did not err in addressing this domain.

      2.      Caring for Yourself

JSW also claims that the ALJ erred under this domain by imposing no limitation. The ALJ opined that:

> <u>The claimant has no limitation in the ability to care for herself</u>. She is always described as being cooperative, pleasant, and well-groomed child who is appropriately dressed. There is no objective medical evidence of her engaging in reckless behavior or being unable to perform age-appropriate activities of daily living such as dressing, bathing, playing computer games, and watching television.

[A.R. at 33.] Although the ALJ correctly addressed several relevant factors under this domain, he failed to consider JSW's inability to manage her meals and blood sugar as well as the necessity for an adult to administer her insulin. Indeed, the inability to take medication and follow medical directives are relevant factors under this domain. 20 C.F.R. § 416.926a(k)(3)(iv) ("Examples of limited functioning in caring for yourself" include "self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take your medication), or you ignore safety rules.").

The Commissioner contends that finding no limitation under this domain is consistent with the opinions of Drs. Gaddy, Hill, Roush, and Horton [A.R. at 281, 324] as well as her second grade teacher. [A.R. at 210.] However, the ALJ never cited these records or embraced this reasoning under this domain. *See Parker*, 597 F.3d at 922 (explaining that an agency's lawyer is not permitted to defend the agency's decision on grounds that the agency itself had not embraced); *Shockley*, 2009 WL 1456956, at *4 ("This Court cannot rely on the post-hoc reasoning provided by the Commission, and it is therefore disregarded."). Thus, the ALJ erred by failing to address JSW's ability to follow dietary restrictions, manage her meals, and administer her medication.

      3.      Health and Physical Well-Being

Under this domain, JSW takes issue with the accuracy of several statements made by the ALJ. JSW argues that the ALJ played doctor when he concluded that JSW's diabetes has been "under poor control due to external stressors, such as her mother's health and lack of employment and housing." [A.R. at 33.] This statement, however, is supported by the record. Dr. Eugster opined that "[t]hings have been stressful at home due to Mom's lack of a job" [A.R. at 272], and that "[i]t has been a very stressful time for the family since [JSW's] mom was recently injured in an electrical fire." [A.R. at 380.]

The ALJ also stated that JSW's "'glycemic control is significantly improved' as the majority of her blood sugars are in the average range despite her tendency to skip breakfast, overeat, and sneak food without taking additional insulin." [A.R. at 33.] JSW contends this statement is also inaccurate. The Magistrate Judge agrees. In February 2011, Dr. Eugster noted that JSW's "glycemic control has deteriorated significantly compared to her last visit . . . ." [A.R. at 487.] In August 2011, Dr. Eugster noted that JSW's glycemic control has "slightly improved compared to her last visit but is still above the target range for a child of her age." [A.R. at 486.] The Commissioner also cites to school records documenting JSW's blood sugar over a thirty day period in March 2011, which occurred between Dr. Eugster's examinations. [A.R. at 450–51.] This record, however, does not show significant improvement or otherwise undermine Dr. Eugster's assessment of slight improvement. Therefore, the ALJ's observation of "significant" improvement overstates Dr. Eugster's conclusion of "slight" improvement.

The final statement under attack is the ALJ's observation that JSW's symptoms "do not greatly affect her functioning at school." [A.R. at 34.] JSW argues that the ALJ did not account

for absences and interruptions in classes due to low blood sugar levels. As noted, the ALJ need not mention every piece of evidence in the record, so long he builds a logical bridge from the evidence to his conclusion. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ did so by qualifying his statement with "do not greatly affect." In the Magistrate Judge's view, such a statement is sufficient to account for absences and interruptions in classes.

        4.        Credibility Assessment

As part of the ALJ's functional equivalent analysis, he assessed Wills' credibility and opined that she "report[ed] reduced functioning that is inconsistent with the medical evidence. Her credibility is also reduced in that this is her seventh application for benefits." [A.R. at 35.] The Magistrate Judge finds this statement problematic for several reasons. It is not clear what "reduced" credibility actually means. Moreover, the ALJ found that her reports of reduced functioning are inconsistent with medical evidence, but the ALJ failed to provide any examples or explain this statement. Furthermore, such a conclusion is partially inconsistent with the record. For example, it is undisputed that JSW's ability to function is based on her blood sugar level and ability to receive insulin. This is a functional limitation that Wills represented to the ALJ and to assert that it is inconsistent with the medical evidence is inaccurate. This example demonstrates one reason why it is important for the ALJ to adequately articulate his reasoning, and when necessary parse through testimony and explain what parts are consistent and inconsistent.

Turning to the ALJ's comment that submitting seven applications for benefits raises credibility issues, this fact alone does not necessarily warrant "reduced" credibility. While a multitude of denied applications could be indicative of questionable credibility, every

application should be assessed on the merits and the crucial determination is whether testimony is consistent with the record. As discussed, the ALJ's unexplained conclusion that Wills' testimony about functionality is not credible is insufficient.

     5.     Remand

In summary, JSW has identified several errors with respect to the ALJ's functionally equivalent analysis. These errors are significant enough where the ALJ's conclusion is not supported by substantial evidence, especially given that the ALJ will have to reassess Wills' credibility in light of these needed corrections. Furthermore, the ALJ's failure to articulate his reasons for finding "reduced" credibility is grounds for reversal. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) ("[W]here the Commissioner's decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded.'"); *Rinaldi-Mishka v. Astrue*, No. 12-C-1305, 2013 WL 3466844, at *12 (N.D. Ill. July 8, 2013) ("[T]he ALJ 'must at least minimally articulate' her analysis to allow meaningful review."). Accordingly, the Magistrate Judge concludes that these errors contained in the ALJ's functional equivalent analysis provide an additional basis for remand.

**III.    Conclusion**

For the reasons above, the Magistrate Judge recommends that JSW's brief in support of her appeal [Docket No. 21] be granted, and the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

DATED:    08/14/2013

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com